<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Crim. No. 07-459 (RBK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| SERDAR TATAR, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the following Motions: (1) Defendant's Sealed Motion for Reduction of Sentence Under First Step Act (Doc. 489); (2) Defendant's Motion for Reduction of Sentence Under First Step Act (Doc. 490); and (3) Christopher O'Malley's Motion to Withdraw as Attorney (Doc. 494).

## I.      BACKGROUND

Defendant is Serdar Tatar. Beginning around 2006, Tatar, along with a group of several other men, conspired and developed a plan to commit an attack on the United State Army Base at Fort Dix. *United States v. Duka*, 671 F.3d 329, 332–35 (3d Cir. 2011). The evidence presented at trial indicated that Tatar and the co-defendants developed an interest in violent jihad, particularly attacks against the United States military. *Id.* Over the course of sixteen months, Tatar and the other men sought to acquire numerous weapons, engaged in shooting practice, and discussed plans to attack Fort Dix. *Id.* In discussing these plans, the defendants conducted research and Tatar personally procured a map of the army base to use in planning and coordinating such an attack. *Id.*

1

Regarding the overall plan to attack Fort Dix, Tatar told an FBI informant in a recorded conversation, "I'm in, honestly, I'm in." *Id.* In 2008, a jury convicted Tatar of conspiracy to murder members of the United States military, in violation of 18 U.S.C. §§1114 and 1117. (Doc. 371.) The Court accordingly sentenced Tatar to 396 months in prison. (Doc. 427.) On appeal, the Third Circuit affirmed Tatar's conviction. 671 F.3d at 356.

Tatar is now thirty-seven years old and is serving his sentence at Memphis FCI. Tatar has 179 months left to serve on his 396-month custodial sentence. Despite this remaining sentence, Defendant seeks compassionate release due to the ongoing COVID-19 pandemic. (*See* Docs. 489 ("Mot."), 490, and 493 ("Supp. Brief.")) Tatar applied to the Bureau of Prisons for compassionate release, but the request was denied. (Opp. at 4.)

The Federal Public Defender's Office reviewed Tatar's filing, but determined that the "office [would] not be entering an appearance in this case because [Tatar] does not appear to fall within the class of people that the Centers for Disease Control considers the most vulnerable to COVID-19[.]" (Doc. 494.) Accordingly, Assistant Federal Public Defender Christopher O'Malley, Tatar's trial counsel, filed a Motion to withdraw as counsel. (*Id.*)

## II.     LEGAL STANDARD

### A.  Motion for Reduction of Sentence Under First Step Act

Under the recently enacted First Step Act, a court may afford a defendant "compassionate release for 'extraordinary and compelling reasons.'" *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)). Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons ("BOP") to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." *United States v. Raia*, Civ. No. 20-1033, 2020 WL 1647922, at

*1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)). "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Sellers,* 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Pabon*, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

## III.   DISCUSSION

### A.   Motion for Reduction of Sentence Under First Step Act

The parties agree that Tatar has satisfied the exhaustion requirement and is thus permitted to bring a motion for reduced sentence in this Court. Thus, the Court focuses on the second step of the analysis: (1) whether Tatar has demonstrated that extraordinary and compelling reasons exist for his release and (2) whether the Section 3553(a) factors weigh in Tatar's favor.

#### 1.   Whether Extraordinary and Compelling Reasons Exist

Tatar asserts that the COVID-19 pandemic and the presence of the virus at Memphis FCI constitutes extraordinary and compelling circumstances warranting a reduction in his sentence. (Supp. Br. at 6.) Tatar states that he "is in fear for his health and life because of the high likelihood of catching the virus if and when COVID-19 starts to spread in this institution." (Mot. at 8.) While the Court does not seek to undermine the seriousness of this pandemic, the Court finds these general argument unpersuasive. The Third Circuit recently addressed the issue of COVID-19 as it

pertains to prison populations, stating that the "mere existence of COVID-19 in society and the possibility that it may spread" in a particular prison "alone cannot independently justify compassionate release." *Raia*, 2020 WL 1647922, at *2. The Court also considers the data collected regarding COVID-19 at Memphis FCI. The prison holds a total of 1,070 inmates.[1] However, there are currently only three active inmate cases at the facility.[2] Standing alone, the relatively low existence of COVID-19 at Memphis FCI is insufficient to show "extraordinary and compelling reasons" for release. *See United States v. Stevens*, Crim. No. 19-350-02, 2020 WL 1888968, at *4 (E.D. Pa. Apr. 16, 2020) ("Although the Court is aware of the dangers posed by COVID-19 and is sympathetic to [Defendant's] concern about COVID-19 given his diabetes, speculation about possible future conditions at the FDC does not constitute an exceptional reason for release.") (collecting cases); *United States v. Haney*, Crim. No. 19-541, 2020 WL 1821988 at *5 (S.D.N.Y. Apr. 13, 2020) (denying a 61-year-old defendant's request for early release, stating that although the prison has several confirmed cases of COVID-19, "there is no meaningful counter-evidence suggesting that the COVID-19 virus is rapidly spreading in the [prison]"); *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862 at *2 (D.N.J. Apr. 24, 2020) (finding "the measures instituted by the BOP to be reasonable to address the virus outbreak" at a federal prison in New York even though several inmates had tested positive).

Moreover, the mere presence of COVID-19 at a prison, does not entitle every offender with a medical condition to compassionate release. *See, e.g.*, *United States v. Roeder*, 807 Fed. App'x 157, 161 n.16 (3d Cir. 2020). Rather, Tatar must establish that the risks to him, in light of his

---

[1] *FCI Memphis*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/mem/ (last visited Oct. 26, 2020).
[2] *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 26, 2020).

individual medical conditions and circumstances, are so extraordinary and compelling that the Court should release him with nearly fifteen years left on his sentence.

Tatar does go a step beyond arguing risks of COVID-19 generally by arguing that he is particularly vulnerable to the virus due to his specific health conditions. Tatar contends that he suffers from tuberculosis, which puts him at a higher risk of contracting COVID-19.[3] (Mot. at 5.) In response, the Government argues that Tatar presents no conditions that would put him in the CDC's "high-risk category" (Opp. at 17). With regard to Tatar's tuberculosis claims, the Government asserts that Tatar's medical records in fact establish that he "is not experiencing active tuberculosis symptoms" and instead Tatar may in fact have latent tuberculosis. (*Id.* at 17–20.) If the latter is true, Tatar may actually be at a *reduced* risk of contracting COVID-19. (*Id.* at 20.)

The Court looks to guidance from the CDC to determine whether Tatar's individual medical conditions and circumstances are extraordinary and compelling. According to this guidance, certain categories of individuals face a higher risk from COVID-19.[4] These include "older adults"—defined as "65 years and older"—and "people of any age who have serious underlying medical conditions." *Id.* The serious medical conditions referenced include cancer, chronic kidney disease, heart conditions, weakened immune system from solid organ transplant, obesity, smoking, and type 2 diabetes mellitus.[5]

---

[3] Tatar briefly mentions that he suffers "respi[ratory] problems that [are] the leading cause of heart disease, compromised immune system, [and] kidney problems." (Doc. 490 at 7.) Tatar does not elaborate or explain what these alleged kidney issues are, nor does he assert that he has sought medical care or received a medical diagnosis related to his kidneys. Tatar contends that he "inherited" sleep apnea "from his paternal genes," which he contends is "the leading cause[] of heart disease." (Supp. Brief at 1.) However, Tatar does not assert that he is currently suffering from heart disease. The crux of Tatar's Motion relies on the latent tuberculosis diagnosis. Accordingly, the Court's analysis focuses primarily on this issue.

[4] *People at Increased Risk for Severe Illness*, Center for Disease Control, (Sept. 11, 2020) https://*www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html*.

[5] *People with Certain Medical Conditions*, Center for Disease Control, (Oct. 16, 2020) https://*www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html*

At 37 years old, Tatar is not categorized as an "older adult." Additionally, Tatar does not provide evidence to establish that he has any of the enumerated conditions that would place him at high risk of contracting COVID-19. Tatar states that he "was diagnosed with 'tuber[culosis]' by a skin test soon after he arrived [in] the United States." (Supp. Br. at 5.) However, Tatar arrived in the United States in 1998 and has since "received treatment in order to prevent the illness from spreading to his lungs[.]" (*Id.*) Tatar's medical records do not show he is currently suffering from active tuberculosis or that his condition is uncontrolled. Rather, Tatar concedes that "his condition has thus far been manageable in prison[.]" (*Id.* at 12.)

Moreover, tuberculosis is not among the conditions that the CDC has identified as creating a significant risk of contracting a severe case of COVID-19. Indeed, other courts in this Circuit have denied similar motions where the defendant suffered from tuberculosis, but the "condition [was] controlled and . . . [the defendant] successfully completed his treatment protocol." *See, e.g.*, *United States v. Rodriguez*, No. 17-618, 2020 WL 3447777 (E.D. Pa. June 24, 2020); *United States v. Mark Viboll*, No. 10-742, 2020 WL 5801495, at *2 (E.D. Pa. Sept. 29, 2020) ("Despite his diagnosis of latent TB infection about eight years ago, nothing in the record suggests that [defendant] was treated for this condition prior to August 4, 2020, nor that the prison cannot manage his mild reported symptoms"); *United States v. Brown*, No. 12-00224, 2020 WL 4345077, at *3 (W.D. Pa. July 29, 2020) (denying compassionate release motion and finding "latent TB, by itself does not rise to an extraordinary and compelling reason for release[.]"). Accordingly, because Tatar is only 37 years old and has submitted no evidence that is suffering from an enumerated condition, he does not qualify under this published guidance as being at greater risk of contracting a severe case of COVID-19.

Because Defendant's health conditions do not place him at a significantly greater risk of complications from COVID-19, he does not meet the required "extraordinary and compelling" standard for reduction of his sentence. *See United States v. Epstein*, Crim. No. 14-287-1, 2020 WL 2537648 (D.N.J. May 19, 2020) (denying an inmate's motion for sentence reduction after finding that his health conditions were under control while in prison).

## 2. Section 3553(a) Factors

Moreover, an analysis of the Section 3553(a) factors further supports the denial of Tatar's request for sentence reduction. In considering whether to reduce a defendant's sentence, a court must look to the factors contained in 18 U.S.C. § 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

18 U.S.C. § 3553.

Tatar argues that he has been sufficiently rehabilitated in prison. He asserts that "in pursuit of his rehabilitation," he has "devoted himself to education" and "successfully received an extensive achievement[.]" (Supp. Br. at 11.) He states that he presents a "low-risk of recidivism" as a first offender with no prior arrests. (*Id.* at 20.) Tatar further contends that release is warranted because he has been a "model prison inmate" and has befriended military veterans that he is incarcerated with. (*Id.* at 12, 21–22.)

While the Court commends Tatar for his actions while in prison, the Court finds that the Section 3553(a) factors weigh firmly against compassionate release. Tatar undoubtedly committed

an extremely serious crime for which adequate deterrence and punishment is required. At this time, Tatar has served less than half of his thirty-year sentence. Moreover, despite Tatar's contentions to the contrary (*id.* at 18–20), Tatar was not a minor and reluctant member of the underlying conspiracy. Rather, Tatar played a crucial role when he provided the co-defendants with a map of the Fort Dix army base and further affirmed his participation in the conspiracy when Tatar told the other defendants that he "was in." On these facts and the totality of Defendant's actions, this Court finds that Section 3553(a) factors weigh against granting Defendant's motion for a reduced sentence. In finding so, the Court is cognizant of the need to protect the public and the seriousness of Tatar's conduct. *See United States v. Butler*, Crim. No. 19-834-10, 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (denying a motion for early release of a MDC inmate with asthma and a serious heart condition, after finding that, "[w]hile the prospect of contracting COVID-19 undeniably presents a serious risk to [the defendant's] health, his [early] release . . . at least equally exposes the community to a serious risk that he would resume violence."). Accordingly, the Motion for Compassionate Release is **denied**.

## IV.   CONCLUSION

For the reasons contained herein, (1) Defendant's Sealed Motion for Reduction of Sentence Under First Step Act (Doc. 489) is **DENIED**; (2) Defendant's Motion for Reduction of Sentence Under First Step Act (Doc. 490) is **DENIED**; and (3) Christopher O'Malley's Motion to Withdraw as Attorney (Doc. 494) is **GRANTED**. An accompanying Order shall issue.


Dated: 11/2/2020                                          /s/ Robert B. Kugler
                                                         ROBERT B. KUGLER
                                                         United States District Judge

8